IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER GLENN, | : | |
| a/k/a KAREN MARIE WILSON, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. 23-CV-3294 |
| | : | |
| v. | : | |
| | : | |
| GEORGE LITTLE, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**HODGE, J.**                                                                                              **NOVEMBER 30, 2023**

Plaintiff Karen Marie Wilson,[1] a prisoner currently incarcerated at SCI Phoenix, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials at SCI Phoenix failed to protect her from another inmate, which resulted in her being attacked on July 23, 2023. Wilson also avers that prison officials violated her rights by failing to house her in a single cell. Wilson was granted leave to proceed *in forma pauperis* in a prior Order (ECF No. 19). For the following reasons, the Court will dismiss Wilson's Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and certain claims will be permitted to proceed. Because some of Wilson's claims will be dismissed without prejudice, she will be granted the option of proceeding only on the claims the Court concludes pass statutory screening or filing an amended complaint to attempt to cure the defects discussed below.

---

[1] This civil rights action was initiated by a *pro se* litigant who identified herself to the Court as Karen Marie Wilson. As discussed in more detail below, Wilson avers in her Complaint that she is a transgender woman legally known as Christopher Glenn. Throughout this Memorandum, the Court will refer to Plaintiff as Karen Marie Wilson or Wilson because this is how she has identified herself to the Court and, therefore, appears to be her preferred name. However, due to prison mail regulations, the official caption of this case will continue to record the plaintiff as Christopher Glenn so that she may receive mail from the Court.

I.   **FACTUAL ALLEGATIONS**[2]

Wilson names the following individuals as Defendants in her Complaint: (1) George Little (identified in the Complaint as the Secretary/Executive Director of the Pennsylvania Department of Corrections ("DOC")); (2) Mr. Joseph Terra (identified as the Superintendent of SCI Phoenix); (3) Ms. Sipple (identified as a Deputy Superintendent of SCI Phoenix); (4) Mr. Hensley (identified as a Deputy Superintendent of SCI Phoenix); (5) Mr. Kertes (identified as a Deputy Superintendent of SCI Phoenix); (6) Mr. Wynder (identified as a Deputy Superintendent of SCI Phoenix); (7) Lt. Aguliar (identified as a Security Lieutenant at SCI Phoenix); (8) Mr. Smith (identified as the Unit Manager of A Unit at SCI Phoenix); (9) Ms. Baldwin (identified as the Unit Manager of the Psychiatric Unit and F Unit at SCI Phoenix); (10) Mrs. Thomas (identified as the Unit Manager of R Unit at SCI Phoenix); (11) Mrs. Watson (identified as the Counselor of A Unit at SCI Phoenix); (12) Mrs. Lundy (identified as the Counselor of H Unit at SCI Phoenix); (13) Tyler James Logan (identified as the Counselor of R Unit at SCI Phoenix); (14) John Muick (identified as the PREA Manager at SCI Phoenix); (15) Mr. Curly (identified as the Morning Shift Sergeant of H Unit at SCI Phoenix); (16) Unknown Program Review Committee Members for the Pennsylvania Department of Corrections; (17) Mr. Joe Walsh (identified as a Nurse Practitioner for the Pennsylvania Department of Corrections/Wellpath Correctional Healthcare Company); and (18) Unknown Afternoon Shift Sergeant H Unit at SCI Phoenix. (ECF No. 2 at 3, 13-15.) All of the Defendants are sued in their individual and official capacities. (*Id.*)

---

[2] The facts set forth in this Memorandum are taken from Wilson's Complaint, which consists of the Court's form complaint available to prisoners to raise constitutional claims, a typewritten portion, and a handwritten portion. The Court deems the entire submission to constitute the Complaint, and adopts the continuous pagination assigned to the Complaint by the CM/ECF docketing system.

2

Wilson avers that she is, and was, at all times during her confinement at SCI Phoenix, a transgender woman on hormone replacement therapy, who lives her life completely as a woman and possesses prominent female characteristics, including breasts. (*Id.* at 16.) Wilson further asserts that she "is recognized by the department of corrections as female." (*Id.*) Wilson has been incarcerated at SCI Phoenix since July 2022 and, since that time, she has repeatedly "requested staffing for a single cell restriction (z code)" because she had been "sexually assaulted during a previous incarceration and was at a substantial risk of harm and sexual abuse if housed with another inmate." (*Id.*) Wilson asserts that she is the "only transgender inmate with breasts at SCI-Phoenix who was not single cell restricted that is on Hormone Replacement Therapy." (*Id.*)

In February 2023, Wilson was "denied cell restricted status by SCI-Phoenix administration," which she alleges placed her at a substantial risk of harm and sexual victimization. (*Id.*) Wilson contends that she has a "well documented history of problems" with inmates and cellmates at SCI Phoenix on account of her being a transgender woman, and she's had to request "protective custody self-confinement in the Restricted Housing Unit ["RHU"] numerous times." (*Id.*) Wilson asserts that she has "written grievances" regarding "her safety as a transgender woman in a men's prison" and avers that because of these grievances, "prison officials knew of a substantial risk to [her] safety." (*Id.*)

On June 14, 2023, Wilson requested "self confinement and protective custody" in the RHU out of fear for her safety from her cellmate at the time, Kyle Trivitt, and his friend, Kevin Maranelli, who allegedly are members of a white supremacist gang known as "White Phoenix." (*Id.* at 16-17.) Wilson avers that she had prior issues with Trivitt, and Trivitt also told "Maranelli, the head of White Phoenix, that [Wilson] had informed" the security department at SCI Phoenix

3

that Maranelli was in possession of a tattoo gun.  (*Id.* at 17.)  Wilson allegedly provided a written statement about these issues and was approved for self-confinement in the RHU.  (*Id.*)

On June 21, 2023, "the Program Review Committee and Deputy Superintendent Kertes, voted not to release [Wilson] from the [RHU] to general population" but indicated that a "packet had to be prepared by the security department" before Mrs. Watson could submit a transfer request to the Department of Corrections Central Classification Committee for review and approval.  (*Id.*)  Also, at some point during her time in the RHU, Wilson was told that she had to accept a cellmate.  (*Id.*)  In response, Wilson submitted a grievance explaining that she could not accept a cellmate because she "is a transgender woman who had been previously traumatized and has had problems with everyone she has been celled with for this reason" and she cannot "get away in time to protect herself or get help if she were to be taken advantage of or victimized and harmed by her cellmate."  (*Id.*)  Unit Manager Smith allegedly denied her grievance.  (*Id.*)  Although this grievance was denied, it appears from the Complaint that Wilson continued to be housed in the RHU in a single cell until July 20, 2023 when she was released back into the general population.  (*Id.*)

Wilson further contends that while she was in the RHU during June 2023, she submitted a grievance about Nurse Practitioner Joe Walsh because he "violated [her] rights under the HIPAA policy and procedure by discussing [her] gender dysphoria treatment . . . cell side," thereby allowing other inmates to hear the conversation.  (*Id.*)  Wilson claims that after that conversation with Walsh, other inmates verbally berated and harassed her "for being a tranny, a faggot, [or] a homosexual."  (*Id.*)  Wilson asserts that the other inmates also made threats about "what they would do to [her] if they could get away with it."  (*Id.*)

On July 14, 2023, Wilson allegedly complained "to officials" about her transfer status.  (*Id.*)  Wilson was taken to the security department and informed by Lt. Aguliar that he had lost her

4

written statement.  (*Id.*)  Lt. Aguliar asked her to rewrite the statement so that he could attempt to investigate.  (*Id.*)  Wilson contends that the lost statement "compromized [sic] the integrity of the investigation that [she] was housed in the restricted housing unit because of."  (*Id.*)

On July 20, 2023, Wilson was released from the RHU back to general population in the H Unit.  (*Id.* at 17-18.)  Upon her arrival to H Unit, Wilson was told by Defendant Unknown Afternoon Shift Sergeant of H Unit ("H Unit Sergeant") that she had to move into a cell with inmate Brian Reddick.  (*Id.* at 18.)  Wilson told the Sergeant that she could not move in with Reddick "because he did not get along with transgenders and people affiliated with the LGBTQ+ community."  (*Id.*)  Wilson also allegedly explained to the Sergeant "the risk that this was placing her in if she celled with this particular individual."  (*Id.*)  Reddick also allegedly "made it clear. . . that [Wilson] could not stay in the cell with him."  (*Id.*)  Despite these safety concerns, Wilson moved into the cell with Reddick to avoid any disciplinary action.  (*Id.*)

On July 21, 2023, Wilson "repeatedly spoke with Sgt. Curly and Counselor Lundy" about her cell assignment with Reddick, telling them that she "was having serious issues and at a serious risk of harm if she remained in the cell with [him], and needed to be moved as soon as possible."  (*Id.*)  Although Wilson approached Curly "many times" on this day regarding her perceived safety risk, she alleges that Curly and Lundy "pawned the matter off on the Unit Manager of H Unit who at the time was on vacation."  (*Id.*)  Wilson repeated her safety concerns to Curly on July 22, 2023, and continued to request that she be moved out of the cell she shared with Reddick.  (*Id.*)

On July 23, 2023, following hours of verbal abuse from Reddick, allegedly based on her status as a transgender woman, Wilson was attacked by Reddick.  (*Id.*)  While they were in their cell, Reddick wrestled Wilson to the ground, tied up her wrists and ankles, pulled down her pants and panties, and anally raped her.  (*Id.*)  Reddick told Wilson that he attacked her out of hate and

as "a form of punishment for . . . not moving out of the cell with him." (*Id.*) Wilson reported the sexual assault to the medical director and correctional healthcare administrator. (*Id.* at 18-19.) She was taken to Jefferson Health Medical Center ("Jefferson") for a sexual assault evaluation. (*Id.* at 19.)

When Wilson was released from Jefferson, she was placed in the psychiatric observation unit at SCI Phoenix. (*Id.*) She has requested trauma counseling, and as of the date of the filing of this action, she is still allegedly awaiting counseling. (*Id.*) On August 2, 2023, Wilson was released from the psychiatric unit and placed into Unit J, which is "right next door" to Unit H where she was sexually assaulted. (*Id.*) Wilson avers that she is "continuing to have issues being berated by inmates and harasse[d] and threatened over the fact that she was raped." (*Id.*) Wilson avers that she continues "to experience this harassment and threats and is still in the same general housing area [where] the sexual assault occurred [] placing her at a very substantial risk of serious harm or abuse and victimization." (*Id.*)

Based on these allegations, Wilson brings an Eighth Amendment claim based on the Defendants' alleged failure to protect her from another inmate. (*Id.* at 4, 20.) Wilson also brings a Fourteenth Amendment discrimination claim against Defendants Terra, Sipple, Hensley, Muick, Thomas, Watson, Logan, Smith, and Baldwin for their alleged "failure to appropriately staff [her] as single cell restriction." (*Id.* at 20.) She seeks monetary damages.³ (*Id.* at 6.)

---

³ Wilson also seeks a "declaration that the acts and omissions described within [her] complaint violated [her] rights under the Constitution of the United States." (ECF No. 2 at 23.) However, a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). Because Wilson's request for a declaration only seeks to adjudicate past conduct, it will be dismissed.

## II.    STANDARD OF REVIEW

Wilson is proceeding *in forma pauperis* in this case.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Wilson is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Wilson asserts her constitutional claims pursuant to Section 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a

---

In her Complaint, Wilson requests as relief a temporary restraining order as well as a preliminary and permanent injunction. (ECF No. 2 at 23.)  Wilson has also filed a Motion for Evidentiary Hearing (ECF No. 3) and a Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 4).  These motions, and the determination as to whether Wilson meets the standard for either a temporary restraining order and/or a preliminary or permanent injunction, will be addressed by the Court in a separate memorandum and order.

[4] Because Wilson is a prisoner, she must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act. (*See* ECF No. 19.)

7

plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Official Capacity Claims Against All Defendants

Official capacity claims are indistinguishable from claims against the governmental entity that employs the Defendants, here the Commonwealth of Pennsylvania. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, Section 1983 claims against the individual defendants here—all of whom appear to be employed by the DOC (*see* ECF No. 2 at 21)—are really claims against the Commonwealth, which is shielded from Section 1983 suits by Eleventh Amendment immunity and is not considered a "person" subject to liability under Section 1983. *See also Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of Section 1983). Accordingly, all claims asserted against the Defendants in their official capacity will be dismissed with prejudice.[5] The Court will address Wilson's damages claims against the Defendants in their individual capacities below.

---

[5] Defendant Joe Walsh is identified in the Complaint as being an employee of the "Pennsylvania Department of Corrections/Wellpath Correctional Healthcare Company." (ECF No. 2 at 15.) To the extent that Walsh is an employee of Wellpath, the official capacity claims

**B.     Claims Against Counselor Lundy, Sergeant Curly, and the Unknown Afternoon Shift Sergeant of H Unit**

The Court understands Wilson to be alleging that her Eighth Amendment rights were violated by Counselor Lundy, Sergeant Curly, and the H Unit Sergeant during the events of July 20-23, 2023 because they failed to protect her from an attack by her then cellmate, Brian Reddick. (*See* ECF No. 2 at 17-18.)  The Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes.  *See Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981).[6]  Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and must take reasonable measures to guarantee the safety of the inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  Courts have found that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations omitted).  "Being violently assaulted in prison is simply 'not part of the penalty that

---

against him would nonetheless be subject to dismissal.  Official capacity claims against Wellpath employees are really duplicate claims against Wellpath.  *See Kentucky,* 473 U.S. at 165-66.  A private corporation such as Wellpath, which is under contract to provide prison health services, may be liable under Section 1983 only if that entity's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  For such a claim to be plausible, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).  Nowhere in the Complaint does Wilson allege a Wellpath policy or custom, or that such a policy or custom caused her alleged constitutional harm.

[6] The Eighth Amendment's "cruel and unusual punishments" clause applies when an inmate has been convicted of and sentenced for her crimes.  *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).  Wilson indicates that she has been convicted and sentenced, so the Eighth Amendment governs her claims. (ECF No. 2 at 5.)  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347).

To state a plausible failure to protect claim, Wilson must allege that: (1) the conditions in which she was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (*per curiam*). Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). Wilson must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [her] health or safety." *Id*. at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 125.

Wilson alleges that on July 20, 2023, she told the H Unit Sergeant that she could not move in with Reddick "because he did not get along with transgenders and people affiliated with the LGBTQ+ community" and also explained to the H Unit Sergeant that she would be at risk if she celled with Reddick. (ECF No. 2 at 18.) On July 21, 2023, Wilson "repeatedly spoke with Sgt. Curly and Counselor Lundy" about her cell assignment with Reddick, telling them both that she "was having serious issues and at a serious risk of harm if she remained in the cell" with him. (*Id.*) Wilson spoke to Curly again on July 22, 2023 and repeated her concerns about the risks to her safety. (*Id.*) Reddick attacked Wilson on July 23, 2023. (*Id.*) These allegations support a plausible inference that Lundy, Curly, and the H Unit Sergeant were aware of a specific risk to Wilson's safety from Reddick, as well as a plausible inference that they were deliberately

indifferent to that risk by refusing to move Wilson from the cell she shared with Reddick.[7] Accordingly, Wilson may proceed at this time on her failure to protect claims against Lundy, Curly, and the H Unit Sergeant.

### C. Claims Based on the Denial of Grievances

The only specific allegation Wilson asserts against Unit Manager Smith is that he denied a grievance she submitted after being told that she would have to accept a cellmate during her time in the RHU.[8] (ECF No. 2 at 17.) To the extent that Wilson seeks to assert a civil rights claim against Smith based on the handling of her grievance, this claim is not plausible because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Accordingly, the facts alleged by Wilson about the denial of her grievance does not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice. *See also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances.").

---

[7] While the Court finds that Wilson has plausibly alleged failure to protect claims against Lundy, Curly, and the H Unit Sergeant, Wilson has not set forth a plausible Eighth Amendment claim against any of the other named Defendants. There are no allegations in the Complaint that any of the other named Defendants knew or were aware of and disregarded an excessive risk to Wilson's safety. *See Bradley v. Price*, No. 20-48, 2021 WL 1895062, at *3 (W.D. Wis. May 11, 2021) ("Sexual assault is unquestionably a serious harm . . . [a]nd . . . transgender inmates, face a general risk of sexual assault, but a plaintiff "must do more than show that she faced a general risk of sexual assault: she must show that defendants were aware ... [of] a *specific* threat to her.").

[8] Wilson does not identify the individual who allegedly told her she would have to accept a cellmate, nor does she allege that she actually received a cellmate while she was confined in the RHU.

### D. Claims Based on HIPAA Violations

Wilson's only allegation against Nurse Practitioner Walsh is that he "violated [her] rights under the HIPAA policy and procedure by discussing [her] gender dysphoria treatment" cell side instead of in a private area. (ECF No. 2 at 17.) Wilson avers that nearby inmates overheard their conversation, and this resulted in her being verbally berated and harassed "for being a tranny, a faggot, [or] a homosexual." (*Id.*) To the extent Wilson seeks to bring claims against Walsh pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), that statute does not provide for a federal private right of action. *See Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011); *Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks,* 470 F.3d 569 (5th Cir. 2006); *Altavilla v. Geisinger Wyoming Valley Med. Ctr.*, Civ. A. No. 17-1704, 2018 WL 1630961, at *2 (M.D. Pa. Mar. 12, 2018), *report and recommendation adopted,* 2018 WL 1629870 (M.D. Pa. Apr. 4, 2018) (quoting *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469 (D.N.J. 2013)) ("'The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens.'"). Accordingly, all claims asserting violations of HIPAA will be dismissed with prejudice.

### E. Remaining Individual Capacity Claims

Wilson has failed to state a plausible claim against any of the remaining Defendants. In a Section 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Moreover, "[s]uits against high-level government officials must

satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct."  *Id.*

Wilson has named Deputy Superintendent Wynder as a Defendant (*see* ECF No. 2 at 13-14), but she does not mention him anywhere in the body of her Complaint.  As noted above, Wilson is obligated to explain how each individual named as a Defendant was personally involved in the violation of her constitutional rights, whether due to the prison official's own misconduct or the official's deliberate indifference to known deficiencies in a policy or procedure that violated Wilson's rights.  *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  Because Wilson fails to mention Wynder in the body of her Complaint, she has not stated a plausible basis for imposing liability against him and any claims against him will be dismissed without prejudice.

To the extent that Wilson included Wynder as a Defendant or named any other Defendant simply because they hold supervisory positions at either the DOC or SCI Phoenix, any claims against them based on their supervisory positions would nonetheless be implausible because

liability under Section 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'").

Wilson's allegations against Defendants Deputy Superintendent Kertes, the Unknown Program Review Committee Members, Unit Counselor Watson, and Security Lieutenant Aguliar are sparse. In fact, the only allegations against these Defendants appear to concern the submission of a transfer request on behalf of Wilson. (ECF No. 2 at 17.) Wilson avers that on June 21, 2023, the Program Review Committee and Kertes voted to keep her in the RHU rather than return her to general population but indicated that a "packet had to be prepared by the security department" before Watson could submit a transfer request to the Department of Corrections Central Classification Committee. (*Id.*) Then, on July 14, 2023, Wilson was informed by Aguliar that he had lost her statement that she had written in order to obtain placement in the RHU. (*Id.*) Although not entirely clear, Wilson appears to assert that the lost statement prevented her from either continuing her confinement in the RHU or obtaining her desired transfer.

The constitutional claims Wilson intends to assert against these Defendants is not clear. To the extent that Wilson asserts Fourteenth Amendment due process claims against Kertes, the

14

Unknown Program Review Committee Members, Watson, and Aguliar based on their failure to transfer her, any such claims fail. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). In the prison context, such liberty interest is interpreted narrowly, and the Supreme Court has concluded that the Constitution provides no liberty interest in, among other things, remaining in the general population, *see Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); staying at a particular institution, *see Meachum v. Fano*, 427 U.S. 215, 225-27 (1976); remaining in a particular prison within a state, *see Olim v. Wakinekona*, 461 U.S. 238, 245-47 (1983); or any particular security classification, *see Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement). *See also Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) ("A state has broad authority to confine an inmate in any of its institutions."). Accordingly, to the extent she seeks relief for failure to fulfill a transfer request, Wilson has not set forth a plausible constitutional claim against the Unknown Program Review Committee Members, or Defendants Kertes, Watson, or Aguliar, and these claims will be dismissed without prejudice.

Wilson also asserts a Fourteenth Amendment equal protection claim against Defendants Superintendent Joseph Terra, Deputy Superintendent Sipple, Deputy Superintendent Hensley, Psychiatric Unit Manager Baldwin, R Unit Manager Thomas, R Unit Counselor Tyler James Logan, PREA Manager John Muick, Unit Manager Smith, and Unit Counselor Watson for their alleged "failure to appropriately staff [her] as single cell restriction." (*Id.* at 20.) Other than this

15

conclusory statement, there are no other factual allegations in the Complaint which suggest that the foregoing Defendants acted with an intent or purpose to discriminate against Wilson. Wilson has also failed to establish any personal participation by any of the foregoing Defendants, and as such, her claims against Defendants Terra, Sipple, Hensley, Baldwin, Thomas, Logan, Muick, Smith, and Watson will be dismissed without prejudice.

In order to state an equal protection violation, Wilson must allege "that [she] was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on [her] membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). Wilson's conclusory allegation that Defendants discriminated against her by failing to house her in a single cell, without more, does not plausibly state a claim for a violation of the Equal Protection Clause. *See Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient); *Harris v. Centurion*, No. 21-739, 2021 WL 5177431, at *4 (D. Del. Nov. 8, 2021) (dismissing as frivolous inmate's equal protection claim because allegations were conclusory and inmate could not state a plausible equal protection claim). Accordingly, the Court will dismiss Wilson's equal protection claims without prejudice. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts.").

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Wilson's Complaint in part. Wilson's failure to protect claims against Counselor Lundy, Sergeant Curly, and the Unknown Afternoon Shift Sergeant of H Unit pass statutory screening and will proceed to service under Federal Rule

of Civil Procedure 4 and 28 U.S.C. § 1915(d).  Wilson's official capacity claims, as well as her claims based on an alleged violation of HIPAA and denial of grievances, are dismissed with prejudice.  The remainder of Wilson's claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Considering Wilson's *pro se* status, the Court will give Wilson the option of filing an amended complaint in the event she can address the defects the Court has noted as to any claims dismissed without prejudice.  An appropriate Order follows, which directs service of Wilson's failure to protect claims against Counselor Lundy, Sergeant Curly, and the Unknown Afternoon Shift Sergeant of H Unit, and provides Wilson further guidance on her options for filing an amended complaint.

        **BY THE COURT:**

        **/s/ Hon. Kelley B. Hodge**
        _____
        **KELLEY BRISBON HODGE, J.**