IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER GLENN, | : | |
| a/k/a KAREN MARIE WILSON, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. 23-CV-3294 |
| | : | |
| v. | : | |
| | : | |
| MRS. LUNDY, *et al.*, | : | |
|     Defendants. | : | |

### MEMORANDUM

**HODGE, J.**                                                                                                                                                                 **JUNE 11, 2024**

       Plaintiff Karen Marie Wilson[1] filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials at SCI Phoenix failed to protect her from another inmate, which resulted in her being attacked on July 23, 2023. Currently before the Court is the Motion to Dismiss (ECF No. 30) filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendants Mrs. Lundy, identified in the Motion as DeAndra Lundy, and Mr. Curley, identified as Patrick Curley (collectively "the Commonwealth Defendants"). Wilson filed a Response to the Motion (ECF No. 33).[2] The Commonwealth Defendants filed a Reply (ECF No. 36), and

---

[1] This civil rights action was initiated by a *pro se* litigant who identified herself to the Court as Karen Marie Wilson. As discussed in more detail below, Wilson avers in her Complaint that she is a transgender woman legally known as Christopher Glenn. Throughout this Memorandum, the Court will refer to the Plaintiff as Karen Marie Wilson or Wilson because this appears to be her preferred name. However, due to prison mail regulations, the official caption of this case will continue to record the plaintiff as Christopher Glenn so that she may receive mail from the Court.

[2] Wilson characterized her Response as a "Motion in Response." In the accompanying Order, the Clerk of Court will be directed to recharacterize the pleading as a Response and terminate it as a motion.

Wilson filed a Sur Reply (ECF No. 39).  For the following reasons, the Commonwealth Defendants' Motion to Dismiss is denied.

I.       FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[3]

Wilson filed her Complaint naming approximately eighteen Defendants, all of whom are allegedly employed by the Pennsylvania Department of Corrections ("DOC") at SCI Phoenix.[4] (Compl. (ECF No. 2) at 3, 13-15.)  Wilson is, and was, at all times during her confinement at SCI Phoenix, a transgender woman on hormone replacement therapy, who lives her life completely as a woman and possesses prominent female characteristics, including breasts.  (*Id.* at 16.)  Wilson further asserts that she "is recognized by the department of corrections as female." (*Id.*)  She alleges that during her incarceration at SCI Phoenix, she repeatedly "requested staffing for a single cell restriction (z code)" because she had been "sexually assaulted during a previous

---

[3] The facts set forth in this section of the Memorandum are taken from Wilson's Complaint, which consists of the Court's form complaint available to prisoners to raise constitutional claims, a typewritten portion, and a handwritten portion.  The Court deems the entire submission to constitute the Complaint, and adopts the continuous pagination assigned to the Complaint by the CM/ECF docketing system.

[4] Wilson named the following Defendants:  (1) George Little (Secretary/Executive Director of the DOC); (2) Mr. Joseph Terra (Superintendent of SCI Phoenix); (3) Ms. Sipple (Deputy Superintendent of SCI Phoenix); (4) Mr. Hensley (Deputy Superintendent of SCI Phoenix); (5) Mr. Kertes (Deputy Superintendent of SCI Phoenix); (6) Mr. Wynder (Deputy Superintendent of SCI Phoenix); (7) Lt. Aguliar (Security Lieutenant at SCI Phoenix); (8) Mr. Smith (Unit Manager of A Unit at SCI Phoenix); (9) Ms. Baldwin (Unit Manager of the Psychiatric Unit and F Unit at SCI Phoenix); (10) Mrs. Thomas (Unit Manager of R Unit at SCI Phoenix); (11) Mrs. Watson (Counselor of A Unit at SCI Phoenix); (12) Mrs. Lundy (Counselor of H Unit at SCI Phoenix); (13) Tyler James Logan (Counselor of R Unit at SCI Phoenix); (14) John Muick (PREA Manager at SCI Phoenix); (15) Mr. Curly (Morning Shift Sergeant of H Unit at SCI Phoenix); (16) Unknown Program Review Committee Members for the Pennsylvania Department of Corrections; (17) Mr. Joe Walsh (Nurse Practitioner for the DOC/Wellpath Correctional Healthcare Company); and (18) Unknown Afternoon Shift Sergeant H Unit at SCI Phoenix.  (Compl. at 3, 13-15.)

incarceration and was at a substantial risk of harm and sexual abuse if housed with another inmate." (*Id.*)

In February 2023, Wilson was "denied cell restricted status by SCI-Phoenix administration," which she alleges placed her at a substantial risk of harm and sexual victimization. (*Id.*) Wilson contends that she has a "well documented history of problems" with inmates and cellmates at SCI Phoenix on account of her being a transgender woman, and she's had to request "protective custody self-confinement in the Restricted Housing Unit ["RHU"] numerous times." (*Id.*) Wilson asserts that she has "written grievances" regarding "her safety as a transgender woman in a men's prison" and avers that because of these grievances, "prison officials knew of a substantial risk to [her] safety." (*Id.*)

In June 2023, Wilson requested "self confinement and protective custody" in the RHU out of fear for her safety from her cellmate at the time. (*Id.* at 16-17.) Wilson allegedly provided a written statement and was approved for self-confinement in the RHU. (*Id.* at 17.) At some point during her time in the RHU, Wilson was told that she had to accept a cellmate. (*Id.*) In response, Wilson submitted a grievance explaining that she could not accept a cellmate because she "is a transgender woman who had been previously traumatized and has had problems with everyone she has been celled with for this reason" and she cannot "get away in time to protect herself or get help if she were to be taken advantage of or victimized and harmed by her cellmate." (*Id.*) Although this grievance was denied, it appears from the Complaint that Wilson continued to be housed in the RHU in a single cell until July 20, 2023 when she was released back into the general population. (*Id.*)

On July 20, 2023, Wilson was released from the RHU back to general population in the H Unit. (*Id.* at 17-18.) Upon her arrival to H Unit, Wilson was told by Defendant Unknown

3

Afternoon Shift Sergeant of H Unit ("Sergeant") that she had to move into a cell with inmate Brian Reddick. (*Id.* at 18.) Wilson told the Sergeant that she could not move in with Reddick "because he did not get along with transgenders and people affiliated with the LGBTQ+ community." (*Id.*) Wilson also allegedly explained to the Sergeant "the risk that this was placing her in if she celled with this particular individual." (*Id.*) Reddick also allegedly "made it clear. . . that [Wilson] could not stay in the cell with him." (*Id.*) Despite this, Wilson moved into the cell with Reddick to avoid being charged with disciplinary action if she refused. (*Id.*)

On July 21, 2023, Wilson "repeatedly spoke with Sgt. Curly and Counselor Lundy" about her cell assignment with Reddick, telling them that she "was having serious issues and at a serious risk of harm if she remained in the cell with [him], and needed to be moved as soon as possible." (*Id.*) Although Wilson approached Curly "many times" on this day regarding her perceived safety risk, she alleges that Curly and Lundy "pawned the matter off on the Unit Manager of H Unit who at the time was on vacation." (*Id.*) Wilson repeated her safety concerns to Curly on July 22, 2023 and continued to request that she be moved out of the cell she shared with Reddick. (*Id.*)

On July 23, 2023, following hours of verbal abuse from Reddick, allegedly based on her status as a transgender woman, Wilson was attacked by Reddick. (*Id.*) While they were in their cell, Reddick wrestled Wilson to the ground, tied up her wrists and ankles, pulled down her pants and panties, and anally raped her. (*Id.*) Reddick told Wilson that he attacked her out of hate and as "a form of punishment for . . . not moving out of the cell with him." (*Id.*) After the incident, Reddick made Wilson "flush her panties as they had blood on them." (*Id.*)

Wilson reported the sexual assault to Medical Director Latizzio and Correctional Healthcare Administrator Huner, who spoke with her on July 26, 2023. (*Id.* at 18-19.) She avers

4

that Lt. Patterson of the PREA[5] Department commenced an investigation, and she was taken to Jefferson Health Medical Center ("Jefferson") for a sexual assault evaluation. (*Id.* at 19.) Wilson asserts that the Pennsylvania State Police ("PSP") were contacted, and they "are currently investigating the matter." (*Id.*) When Wilson returned from Jefferson, she was placed in the psychiatric observation unit at SCI Phoenix. (*Id.*) On August 2, 2023, she was released from the psychiatric unit "without the proper time to process and deal with the trauma she had just experienced." (*Id.*)

Based on her allegations, Wilson brings an Eighth Amendment claim based on the Defendants' alleged failure to protect her from another inmate. (*Id.* at 4, 20.) Wilson also brought a Fourteenth Amendment discrimination claim against certain Defendants for their alleged "failure to appropriately staff [her] as single cell restriction." (*Id.* at 20.) She seeks monetary damages. (*Id.* at 6.)

Wilson avers that in addition to the foregoing verbal reports, she filed a grievance at SCI Phoenix asserting "deliberate indifference failure to protect discrimination." (*Id.* at 8.) She alleged in her Complaint that the exhaustion of administrative remedies was still in process. (*Id.*) As for information relevant to the exhaustion of administrative remedies, Wilson asserted that she "will continue to experience irreparrable [sic] harm and injury." (*Id.*)

In a December 1, 2023 Memorandum and Order, the Court granted Wilson leave to proceed *in forma pauperis* and dismissed her Complaint in part with prejudice and in part without prejudice on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), while permitting certain claims to proceed. *Glenn v. Little*, No. 23-3294, 2023 WL 8357944 (E.D. Pa. Dec. 1, 2023); *see also* ECF No. 21. Specifically, the Court directed service of Wilson's Eighth

---

[5] PREA refers to the Prison Rape Elimination Act.

5

Amendment claims against Counselor Lundy, Sergeant Curly, and the Unknown Afternoon Shift Sergeant of H Unit for failure to protect her from harm on July 23, 2023.  *Id.* at *5, *8; *see also* ECF No. 22.  Wilson's official capacity claims, as well as her claims based on the denial of grievances and those asserting violations of the Health Insurance Portability and Accountability Act ("HIPAA") were dismissed with prejudice.  *Id.* at *4, *6.  Her remaining individual capacity claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.[6]  *Id.* at *6-*8.  Service was made on the Commonwealth Defendants, Lundy and Curly.[7]  (ECF No. 27.)

## II.     THE PENDING MOTION

The Commonwealth Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 30.)  They argue that Wilson's Complaint must be dismissed because she failed to exhaust administrative remedies fully and properly prior to filing this action, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (*Id.* at 4, 9-16.)  Defendants assert initially that because Wilson concedes that she failed to completely exhaust administrative remedies before filing the Complaint, they are entitled to dismissal.  (*Id.* at 13.)  Further, Defendants aver that even if a pending grievance was sufficient for the purposes of exhausting administrative remedies, Wilson's failure to include "required documentation" during the final stage of administrative review as mandated by the Inmate

---

[6] Although Wilson was provided the opportunity to file an amended complaint as to any claims dismissed without prejudice, she did not do so within the time permitted by the Court's December 1, 2023 Order.  (*See* ECF No. 22.)

[7] The Court's December 1, 2023 Order provides that service will be made upon Defendant "Unknown Afternoon Shift Sergeant of H Unit" if and when Wilson provides sufficient identifying information to allow for service.  (ECF No. 22.)

Grievance System, DC-ADM 804,[8] resulted in the procedural default of her claims, thereby warranting dismissal of the Complaint.  (*Id.* at 13-16.)

In response to the Commonwealth Defendants' Motion, Wilson asserts that when she filed her Complaint, she also filed a Motion for Preliminary Injunction and Temporary Restraining Order (*see* ECF No. 4).  Wilson avers that it was her intention to seek protection from the Court while waiting for her administrative remedies to be completely exhausted.  (ECF No. 33 at 2-3.)  She also argues that she was not required to exhaust administrative remedies because the DC-ADM 804 grievance system was unavailable to her.  (*Id.* at 3.)  More specifically, Wilson cites the language of the Facility Manager's Appeal Response dated September 18, 2023, attached as Exhibit A to Defendants' Motion.  (*Id.*; ECF No. 30-1 at 3.)  According to Wilson, the response to her grievance indicated as follows:

> [Y]our report is under investigation by the PREA office at SCI-Phoenix as well as by the Pennsylvania State Police. The concerns you raised in your grievance are included as reviewed within the investigative process.  As a result, your concerns will not be address [sic] through this grievance response.

(*Id.*)  Wilson also relies on an opinion from the Western District of Pennsylvania, *Sarvey v. Wetzel*, No. 16-157, 2018 WL 1519072 (W.D. Pa. Mar. 28, 2018), in which United States Magistrate Judge Susan Baxter concluded that the inmate-plaintiff in that case was not required to exhaust administrative remedies because the remedies embodied within DC-ADM 804 and DC-ADM 008 were unavailable to her.  (*Id.* at 3, 7-12.)

---

[8] The DOC's general grievance process, also referred to as the Inmate Grievance System, is set forth in policy number DC-ADM 804, which is available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last viewed June 5, 2024).  *See generally Moore v. Lamas*, No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023) ("DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances.").

In reply, the Commonwealth Defendants acknowledge that their reliance on DC-ADM 804 was improper and concede that Wilson was not required to pursue the Inmate Grievance System outlined within DC-ADM 804 for the purposes of exhausting administrative remedies under the PLRA. (ECF No. 36 at 3.) Rather, they argue that Wilson was required to exhaust administrative remedies by completing the PREA reporting procedures enumerated within DC-ADM 008 prior to initiating this action. (*Id.* at 3, 7-8.) The Commonwealth Defendants maintain, however, that administrative remedies are not exhausted under DC-ADM 008 until the DOC's investigation is complete and, because the investigation into Wilson's allegations was "still in process" at the time she filed her Complaint, she failed to fully exhaust administrative remedies warranting dismissal of her Complaint. (*Id.* at 9-10.)

By way of sur reply, Wilson asserts that she has made several inquiries with PREA staff at SCI Phoenix and has been advised numerous times that the DOC's investigation of her sexual assault allegations "was complete and turned over to the Pennsylvania State Police prior to the filing of this lawsuit." (ECF No. 39 at 3.) Wilson argues that the completion of the investigation is "further supported by the release of . . . Reddick from administrative confinement status pending investigation back into general population at SCI-Phoenix." (*Id.*)

### III.   STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).  The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

IV. **APPLICABLE LAW**

    A. **PLRA Exhaustion**

"In an effort to curb the number of prisoner filings in the federal courts, Congress enacted the PLRA which[] . . . mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983.") (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

In cases governed by the PLRA, courts must address whether the prisoner-plaintiff has substantially "complet[ed] the administrative review process in accordance with the applicable procedural rules." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 85), *see also Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018); *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000) ("[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial."). These procedural rules are supplied by the individual prisons. *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *see also Smith v. Sec'y of Pa. Dep't of Corr.*, 747 F. App'x 101, 103 (3d Cir. 2018) (stating that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of the grievance system at his institution); *Booth v. Churner*, 206 F.3d 289, 299 (3d Cir. 2000) (explaining that a plaintiff must follow each of the steps to exhaust his administrative remedies under the PLRA). "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey*, 968 F.3d at 305 (citing *Shifflet v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies.")).

"There is one exception to the mandatory exhaustion requirement: administrative remedies must be available to the prisoner." *Downey*, 968 F.3d at 305 (citing *Ross v. Blake*, 578 U.S. 632 (2016)). "An administrative remedy is unavailable when it 'operates as a simple dead-end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Shifflett*, 934 F.3d at 365); *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020).

While a failure to exhaust the grievance process can be a basis for dismissal for failure to state a claim where it appears on the face of the complaint, exhaustion is generally an affirmative defense and thus prisoners are not required to specifically plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 212, 216; *Downey*, 968 F.3d at 305 ("Failure to exhaust is an affirmative defense that the defendant must plead and prove").

**B.    Exhaustion of Sexual Abuse and/or Sexual Harassment Claims**

Allegations of sexual abuse or sexual harassment against a staff member or inmate-on-inmate sexual contact are exclusively processed pursuant to DOC Policy Statement DC-ADM 008, which covers PREA.[9]  *See Williams v. Phillps*, No. 17-4291, 2018 WL 1887462, at *2 (E.D. Pa. Apr. 20, 2018) (stating that the Inmate Grievance System, DC-ADM 804, is not meant to address allegations of sexual abuse and that such allegations must be addressed through DC-ADM 008); *see also Ingram v. Lane*, No. 16-1191, 2018 WL 3370673, at *3, *4 (W.D. Pa. May 22, 2018), *report and recommendation adopted*, No. 16-1191, 2018 WL 3368732 (W.D. Pa. July

---

[9] The DOC's policy concerning sexual abuse and/or sexual harassment of an inmate is set forth in policy number DC-ADM 008, which is available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/008%20Prison%20Rape%20Elimination%20Act%20(PREA).pdf (last viewed June 5, 2024).

10, 2018) (providing that plaintiff properly exhausted administrative remedies pertaining to his sexual abuse allegations against a staff member via DC-ADM 008 by reporting the allegations to authorities).

Pursuant to DC-ADM 008, an inmate who is a victim of sexual abuse, sexual harassment, or staff neglect that may have contributed to such sexual abuse or harassment, shall report the allegation to a staff member as soon as possible. *See* DC-ADM 008, Section 12(B)(1). There are several acceptable methods of reporting available to an inmate who is a victim, including making a "verbal report to any staff member." *See* DC-ADM 008, Section 12(B)(4)(a).[10] The policy specifically provides that "[i]nmates shall not utilize the inmate grievance system to report sexual abuse or sexual harassment by a staff member or inmate-on-inmate sexual abuse. . . ." *See* DC-ADM 008, Section 12(B)(8). At least one court has commented that DC-ADM 008 does not provide any information regarding how an inmate should or could receive follow-up information about a report of sexual abuse. *See also Ingram*, 2018 WL 3370673, at *3.

Each facility is required to develop a written plan to coordinate actions taken in response to an incident of sexual abuse. *See* DC-ADM 008, Section 14. Every report, complaint, or allegation of sexual abuse and sexual harassment shall be investigated promptly, thoroughly, and objectively. *See* DC-ADM 008, Section 18. A preliminary investigation shall be conducted by the facility within 24 hours of the report and referred to the Bureau of Investigations and Intelligence ("BII") or PSP if potential criminal behavior has been identified. *See* DC-ADM 008, Sections 18(A)(1), 18(B)(2). Within five days, BII must assign a case number and determine whether the full investigation will be handled by the BII, PSP, or the Security Office,

---

[10] *See also* 28 C.F.R. § 115.51(a), (c) (requiring the agency to "provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment" and dictating that "Staff shall accept reports made verbally . . .").

and shall notify the entity so designated of its investigative responsibilities. *See* DC-ADM 008, Section 18(C)(3). BII is also responsible for "track[ing] the start date of the investigation, end date of the investigation, assigned investigating agent, alleged victim, alleged abuser, and outcome of the investigation." *See* DC-ADM 008, Section 18(C)(4).

With respect to complaints investigated by the PSP or another law enforcement agency, the facility Security Office is responsible for the following: (1) "ensur[ing] follow-up communication with the investigating agency for updates to the investigative process"; (2) "request[ing] a copy of the investigative information to be included in the Department Investigative file"; (3) "request[ing] notification of the outcome of the investigation in order to notify the inmate"; (4) "submit[ting] an investigative summary, along with the PSP investigative report, to BII for review"; and (5) "ensur[ing] the PREA Tracking System is updated with the status of *the* investigative outcome." *See* DC-ADM 008, Section 18(D)(3)(a-e) (italics in original); *see also Keehn v. Miller*, No. 19-0391, 2020 WL 4471523, at *7 (M.D. Pa. Aug. 4, 2020). DC-ADM 008 does not provide any information regarding how an inmate should or could get follow-up information concerning an investigation. *See also Ingram*, 2018 WL 3370673, at *3.

### V.     ANALYSIS

As the Commonwealth Defendants belatedly acknowledge, reports of sexual abuse must be addressed through the administrative process outlined in DC-ADM 008, as opposed to the Inmate Grievance System. (ECF No. 36 at 3, 7-8.) Accordingly, at issue here is whether Wilson has properly exhausted administrative remedies per the prison's PREA procedures mandated by DC-ADM 008.

Based on the Court's review of the argument advanced by the Commonwealth Defendants, they do not appear to contend that Wilson failed to report the incident in question properly as per the procedural requirements of DC-ADM 008.  Rather, they focus on the completeness of the investigation, maintaining that administrative remedies are not fully exhausted under DC-ADM 008 until the DOC's investigation is complete.  The Commonwealth Defendants therefore allege that because the investigation as to Wilson's allegations was "still in process" when she filed her Complaint, she failed to fully exhaust administrative remedies. (ECF No. 36 at 9-10.)

Despite the Commonwealth Defendants' arguments, the Court does not find that Wilson's alleged failure to properly exhaust administrative remedies is clear from her Complaint, despite her assertion that exhaustion was "still in process."  Importantly, Wilson stated that she made several verbal reports of the allegations of abuse and harassment by Reddick to various staff members,[11] which is consistent with the available reporting options of DC-ADM 008.  Thus, the Court cannot conclude at this stage of the litigation that her claims are not exhausted.  *See Williams*, 2018 WL 1887462, at *3.[12]  Further, the Court recognizes that exhaustion is

---

[11] On July 20, 2023, Wilson told the H Unit Sergeant that she could not move in with Reddick "because he did not get along with transgenders and people affiliated with the LGBTQ+ community." (*Id.* at 17-18.)  Wilson also allegedly explained to the Sergeant "the risk that this was placing her in if she celled with this particular individual" and Reddick also allegedly "made it clear. . . that [Wilson] could not stay in the cell with him."  (*Id.*)  On July 21, 2023, Wilson "repeatedly spoke with Sgt. Curly and Counselor Lundy" about her cell assignment with Reddick, telling them that she "was having serious issues and at a serious risk of harm if she remained in the cell with [him], and needed to be moved as soon as possible." (*Id.*)  Wilson repeated her safety concerns to Curly on July 22, 2023, and continued to request that she be moved out of the cell she shared with Reddick. (*Id.*)  On July 23, 2023, Wilson was attacked by Reddick in the cell they shared.  (*Id.*)  Thereafter, on or about July 26, 2023, Wilson reported the sexual assault to the medical director and correctional healthcare administrator at SCI Phoenix. (*Id.* at 18-19.)

[12] Wilson also avers that she filed a grievance pursuant to the Inmate Grievance System at SCI Phoenix asserting "deliberate indifference failure to protect discrimination." (Compl. at 8.)  In

14

generally an affirmative defense and thus prisoners are not required to specifically plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 212, 216; *Downey*, 968 F.3d at 305.

Moreover, as to the Commonwealth Defendants' contention that Wilson prematurely filed her Complaint because the investigation into her allegations is ongoing, it is not clear from the pleadings what, if any, investigation is ongoing. In her sur reply, Wilson contends that she made several inquiries with PREA staff at SCI Phoenix and has been advised numerous times that the DOC's investigation of her sexual assault allegations "was complete and turned over to the Pennsylvania State Police prior to the filing of this lawsuit." (ECF No. 39 at 3.) As further support that the DOC's investigation is complete, she contends that Reddick had been placed into administrative confinement status pending the investigation, and he has since been placed "back into general population." (*Id.*)

Finally, the Commonwealth Defendants have the burden of demonstrating that Wilson failed to exhaust her administrative remedies prior to initiating the above-captioned case. *See Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013). Based on the allegations of the Complaint, the Court cannot determine whether SCI Phoenix has satisfied its obligations under

---

response to her grievance, Wilson contends that she was told that her report is under investigation by the PREA office at SCI-Phoenix as well as by the PSP, and her concerns would not be addressed through the grievance response. (ECF No. 33 at 3.) Considering these assertions, the Court agrees with the conclusion reached in *Williams*, that because DC-ADM 804 states that the Inmate Grievance System is not available to address allegations of sexual abuse, that grievance procedure is not "available" with respect to a claim of sexual assault and/or sexual harassment. *Williams*, 2018 WL 1887462, at *3 (citing *Oriakhi* v. United States, 165 F. App'x. 991, 993 (3d Cir. 2006) (holding that the PLRA requires an inmate to exhaust "such administrative remedies as are available"); *see also Sarvey*, 2018 WL 1519072, at *2 (finding that the opaqueness of the administrative remedy scheme regarding complaints of sexual abuse based on the wording of DC-ADM 804 and DC-ADM 008 resulted in the administrative remedies being "unavailable" to the plaintiff)).

15

DC-ADM 008.  The United States Court of Appeals for the Third Circuit has held that the PLRA "requires strict compliance by prison officials with their own policies.  Whenever a prison fails to abide by those procedural rules, its administrative remedies have become unavailable, and inmates are deemed to have successfully exhausted their remedies for purposes of the PLRA." *See Keehn*, 2020 WL 4471523, at *8 (quoting *Shifflett*, 934 F.3d 356, 367 (3d Cir. 2019).  There is no indication from the Commonwealth Defendants' papers confirming whether SCI Phoenix's Security Office has abided by the procedural rules set forth in DC-ADM 008 by "ensur[ing] follow-up communication with the [PSP] for updates to the investigative process" or by "request[ing] notification of the outcome of the investigation in order to notify" Wilson.  *See* DC-ADM 008, Section 18(D)(3)(a-e); *see also Keehn*, 2020 WL 4471523, at *8 (finding that defendants failed to show that the remedies set forth in DC-ADM 008 were available when a PREA complaint had been pending before the PSP for at least a year and victim had not yet been interviewed).  "While DC-ADM 008 sets forth no timeline as to how long an investigation into an inmate's PREA complaint should last, . . . such an investigation cannot be allowed to languish indefinitely."  *Keehn*, 2020 WL 4471523, at *8.

## VI. CONCLUSION

For the foregoing reasons, the Court will deny the Commonwealth Defendants' Motion to Dismiss.  An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

**KELLEY BRISBON HODGE, J.**

16